NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                        |   |                                    |
|------------------------|---|------------------------------------|
| DAVID HOWARD,          | : |                                    |
|                        | : | Civil Action No. 14-4758 (JMV)     |
| Petitioner,            | : |                                    |
|                        | : |                                    |
| v.                     | : | **OPINION**                        |
|                        | : |                                    |
| STEPHEN D'ILIO, *et al.*, | : |                                 |
|                        | : |                                    |
| Respondents.           | : |                                    |

---

**VAZQUEZ, DISTRICT JUDGE:**

Before this Court is the Amended Petition for a writ of habeas corpus of Petitioner David Howard ("Petitioner"), brought pursuant to 28 U.S.C. § 2254. (D.E. No. 4). Respondents filed a response to the petition. (D.E. No. 15). For the following reasons, the Court DENIES the Petition, and declines to issue a certificate of appealability.

## I. BACKGROUND

In its opinion affirming the denial of post-conviction relief ("PCR"), the Superior Court of New Jersey, Appellate Division, provided the following brief summary of the factual background of Petitioner's trial:

> Following a trial, a jury convicted defendant of murder for purposefully or knowingly causing the death of Anthony Baker, N.J.S.A. 2C:11–3(a)(1) or (2) (count one); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39–5(b) (count two); and second-degree possession of the same handgun for an unlawful purpose, N.J.S.A. 2C:39–4(a) (count three). In a separate trial before the same jury, defendant was convicted of second-degree possession of a handgun by a prohibited person, N.J.S.A. 2C:39–7(b)(1).
>
> . . .

[T]he trial court described the manner in which the shooting occurred as follows:

> Now in this particular case the victim, Anthony Baker, had walked across the street and told the defendant that he had to leave the area . . . . As a result, the defendant Howard did leave the area, but he returned to the area with a gun. After a period of time the defendant Howard walked across the street, and as he walked past Anthony Baker, he said something to the victim.
>
> . . . As the victim turned around to talk to him, [defendant] shot him point blank in the chest. This was an execution. Although the victim Anthony Baker may have been involved in some improper behavior with respect to drugs at the time, the defendant executed the victim in cold blood.

The court sentenced defendant to a fifty-year prison term with forty-two-and-one-half years of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43–7.2. Defendant's other convictions were either merged with count one or the court imposed concurrent sentences.

. . .

[On direct appeal w]e concluded that defendant received a fair trial and affirmed his convictions, but we remanded minor sentencing issues to the trial court. *State v. Howard,* No. A–2539–05 (App. Div. Aug. 25, 2009), *certif. denied,* 200 N.J. 548 (2009). In that opinion, we noted that the victim's brother, Joseph Baker, and the victim's cousin, West Johnson, witnessed the shooting, and they both positively identified defendant as the shooter. In addition, their eyewitness testimony was corroborated to some extent by Denise Baker, who witnessed the shooting from inside her residence, and by Ismeel Lewis, who was present prior to the shooting. We further noted that defendant did not testify or call any witnesses on his behalf.

After we affirmed defendant's convictions, he filed a petition for PCR alleging, among other things, that he did not receive a fair trial because his attorney was ineffective. Assigned counsel submitted an initial brief, a supplemental brief, and a reply brief in support of defendant's petition. Following oral argument on April 25, 2011,

the PCR court determined that defendant failed to substantiate his
claims and his application was denied.

(D.E. No. 15-23 at 2-5).

As noted, Petitioner appealed his conviction and sentence. The Appellate Division affirmed his conviction on August 25, 2009, but remanded for sentencing issues. (D.E. No. 15-4). The New Jersey Supreme Court denied certification on December 16, 2009. *State v. Howard*, 200 N.J. 548 (2009). Petitioner then filed a PCR petition, which was denied by the Superior of New Jersey, Law Division, on April 28, 2011. (D.E. No. 4 at 3; D.E. No. 15-1 at 4-7). Petitioner appealed, and on November 20, 2013, the Appellate Division affirmed the denial of PCR. (D.E. No. 15-23). The Supreme Court of New Jersey denied certification on June 5, 2014. (D.E. No. 15-26).

Petitioner then filed a habeas petition, executed on July 25, 2014, with this Court. (D.E. No. 1). This Court administratively terminated his petition for failure to use a proper habeas form (D.E. No. 2), and Petitioner submitted an Amended Petition on September 18, 2014 (D.E. No. 4). In his Amended Petition, Petitioner raises seventeen grounds for habeas relief:

1. The jury Instructions were Fatally Flawed in Two respects: (1) Failing to Charge Causation when the Evidence Indicated that a Relative of the Victim, Not Petitioner, May have Fired the Fatal Shot, and (2) Failing to Instruct the Jury on the Clearly Indicated Lesser-Included Offense of Passion/Provocation Manslaughter.

2. The State Improperly Refused Petitioner's Stipulation That He had The Requisite Prior Conviction For The count Of The Indictment Charging Certain Persons Not To Have A Weapon.

3. Trial Counsel was Ineffective for Failing to Request a Wade Hearing

4. Trial Counsel was Ineffective for Erroneously [sic] the Petitioner was a Drug Dealer from a State's Witness

5. Trial Counsel was Ineffective for Failing to Request a Mistrial After the Highly Prejudicial Testi[m]ony by West Johnson

6. Trial Counsel was Ineffective for Failing to Request the Relevant Lesser Included Charges to be Included in the Jury Instruction

7. Trial Counsel was Ineffective for Failing to Request an Instruction on Causation

8. Trial Counsel was Ineffective for Failing to Request an Instruction on Passion/Provocation Manslaughter

9. Trial Counsel was Ineffective for Failing to Object to The Trial Court's Denial of [the] Motion for Acquittal

10. Trial Counsel was Ineffective for Failing to Adequately Argue the Third Party Guilt Defense

11. The Introduction of Other-Crimes/Acts Evidence Deprived the Petitioner of His State and Federal Constitutional Rights to a Fair Trial

12. Petitioner was Deprived of His State and Federal Constitutional Rights to a Fair Trial when He [was] Called both a Racial Slur and Obscenities Repeatedly by a Member of the Victim's Family, who made Various Outbursts and Demonstrated Highly Prejudicial Behavior while Testifying

13. The Trial Court Erred by Neglecting to Properly Instruct the Jury Regarding Media Influences and Comments about the Case from Non-Jurors, and Extraneous Prejudices are Record Supported

14. Trial Counsel was Ineffective for Failing to Present a Complete Defense

15. The State Failed to Present Sufficient Evidence and Witnesses to Support Its unfounded Accusation Brought Against the Petitioner, which Violated the Petitioner's 14th Amendment Right to Due Process

16. The State Assisted Detective Kenny to Testify Falsely Under Oath During the Presentation of Its Case Before the Union County Grand Jury, By Failing to Correct the Known False Testimony

17. The Grand Jury Abdicated Its Responsibility and Returned an Improper Indictment Against the Petitioner on an Unfounded Accusation in Violation of the Petitioner's 5th, 6th and 14th Constitutional Rights.

(D.E. No. 4 at 18-52).

Respondents were ordered to file an answer to the habeas petition. (D.E. No. 15-1). In their answer, Respondents argue that the majority of Petitioner's claims are unexhausted, amounting to a mixed petition, and that Plaintiff's claims are meritless. (*Id.*).

## II.   **LEGAL STANDRD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for habeas purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts

due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). Even if a petitioner's constitutional claims are unexhausted, a federal court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## III.  DISCUSSION

### A.  Ground One: Jury Instructions

Petitioner argues that the trial court erred in failing to instruct the jury on causation and on the lesser included offense of passion/provocation manslaughter. (D.E. No. 4 at 2-5). He explains that because a witness, Ismeel Lewis, testified that both Petitioner and West Johnson fired shots simultaneously, and because the medical examiner testified that the bullet, which exited the victim, neither came from directly in front or behind the victim, it was necessary for the trial court to

instruct the jury on the issue of causation.  (*Id*. at 2-3).  Further, he asserts that because there were mutual gun shots, the trial judge should have instructed the jury regarding the lesser included offense of passion/provocation manslaughter.  (*Id*. at 3).

The New Jersey Appellate Division, on direct appeal, addressed these claims and found they lacked merit:

> In his first point, defendant contends the trial court committed reversible error by failing to instruct the jury on causation and by failing to instruct the jury on the lesser-included offense of passion/provocation manslaughter.  Because neither of these issues were raised before the trial court, we must apply the plain error rule: Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court. [*R*. 2:10-2.]
>
> As the Supreme Court explained in *State v. Macon,* 57 N.J. 325, 336, 273 A.2d 1 (1971), "[t]he possibility [of an unjust result] must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Nonetheless, "the court must explain the controlling legal principles and the questions the jury is to decide.  So critical is the need for accuracy that erroneous instructions on material points are presumed to be reversible error."  *State v. Martin,* 119 N.J. 2, 15, 573 A.2d 1359 (1990) (citations omitted).
>
> . . .
>
> In this case, defendant claims that because Lewis testified that he heard simultaneous gun shots, there was a question about who fired the fatal shot. But that question, the identity of the shooter, was adequately addressed by the court's instruction.  When the trial court instructed the jury on the murder charge it stated, on several occasions, that defendant could not be convicted of murder unless the State proved beyond a reasonable doubt that "defendant, either purposely or knowingly, caused the victim's death or serious bodily injury resulting in death."  Similar charges were repeated in relation to reckless and aggravated manslaughter.  Under these circumstances, we perceive no reasonable basis to conclude that it was error to omit an additional instruction on causation.  The instruction given permitted a finding of guilt on one basis-that

defendant purposely or knowingly fired the fatal shot that killed the victim.

Additionally, defendant contends that a passion/provocation manslaughter instruction was warranted. Because defendant did not request the trial court to instruct the jury on passion/provocation manslaughter, the trial court was not obligated "to sift through the entire record" on its own to determine "if some combination of facts and inferences might rationally sustain a [passion/provocation] manslaughter charge." *State v. Choice,* 98 N.J. 295, 299, 486 A.2d 833 (1985). Absent a specific request by defendant, a trial court is only obligated to instruct the jury on a lesser-included charge "when the facts 'clearly indicate' the appropriateness of that charge." *Ibid.*

The elements of passion/provocation manslaughter are (1) adequate provocation; (2) the absence of a cool-off period between the provocation and the slaying; (3) the provocation must have actually impassioned defendant; and (4) defendant must not have cooled off before the slaying. N.J.S.A. 2C:11-4(b)(2). Based on the eyewitness testimony of Joseph Baker and West Johnson, and the corroborating evidence, there was no rational basis for the jury to acquit defendant of murder but find him guilty of passion/provocation manslaughter. Although words were apparently exchanged between Anthony and defendant prior to the shooting, there was no fighting, and "words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." *State v. Crisantos,* 102 N.J. 265, 274, 508 A.2d 167 (1986). Accordingly, there was no error in failing to give a passion/provocation manslaughter charge, much less plain error.

Contrary to defendant's claim on appeal, Lewis' vague testimony about hearing simultaneous gun shots was insufficient to clearly indicate a basis for the jurors to find that defendant fired his gun because of passion attributable to adequate provocation. Similarly, that testimony was inadequate to raise a factual question about whether this fatal shooting was within defendant's design or contemplation or a result that was too remote or "accidental in its occurrence to have a just bearing on [his] liability." N.J.S.A. 2C:2-3(b).

(D.E. No. 15-4 at 14-17).

The standard for habeas relief based on an erroneous jury instruction looks to "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The effect of an allegedly erroneous jury instruction on a conviction "must be viewed in the context of the overall charge." *Id.* (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal citations and quotations omitted).

The record is clear that the trial judge instructed the jury as to the necessary elements of a crime for murder, and emphasized the need for a jury to find the defendant acted either purposefully or knowingly. (*See* D.E. No. 15-32 at 84-85, 89-90, 94). As noted by the Appellate Division, the trial court also instructed the jury that the State had to prove that Petitioner "either purposely or knowingly, *caused* the victim's death or serious bodily injury resulting in death." (emphasis added). Further, the trial judge repeatedly instructed the jury that the elements of the crime must be proven beyond a reasonable doubt and similar instructions were given on the lesser-included offence of aggravated manslaughter. (*Id*. at 84, 95-98). These repeated instructions, made the jury aware of the necessary elements to consider when rendering a verdict. The issue before the jury was not whether the shot actually caused the victim's death; instead, the critical question was whether Petitioner fired the shot. As such, the Court finds that the trial judge's failure to additionally instruct the jury regarding causation did not so infect the trial as to violate Petitioner's due process rights. Because the state court decision did not violate clearly established federal law, this claim is denied.

Regarding the failure to instruct the jury about the lesser-included offense of passion/provocation, the Court first notes that the state court's ruling relies on New Jersey law in rendering its decision. The United States Supreme Court and the Third Circuit have made clear

that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law. *See Estelle,* 502 U.S. at 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions"). Instead, "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights." *Echols v. Ricci,* 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle,* 502 U.S. at 72–73).

Nevertheless, even if this Court construes the passion/provocation argument as a due process claim, Petitioner is not entitled to habeas relief. The Supreme Court has never recognized that an individual has a due process right to jury instructions on lesser-included offenses in non-capital cases. *See, e.g., Gilmore v. Taylor,* 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error"); *Geschwendt v. Ryan*, 967 F.2d 877, 884 n.13 (3d Cir.) (observing that the Supreme Court, in *Schad v. Arizona*, 501 U.S. 624 (1991), cast doubt on the theory that due process always requires the court to instruct on a lesser-included offense in non-capital offenses by applying a harmless-error standard; conviction of an offense higher up on the ladder, is a reliable indicator that a jury would not have convicted of the least included offense that was not charged); *cf. Beck v. Alabama,* 447 U.S. 625, 627 (1980) (holding it unconstitutional to impose a sentence of *death* "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense"). Because this is a non-capital case and involves issues of state law, this claim is likewise be denied because the Appellate Division's decision, in denying the claim, did not violate clearly established federal law.

**B. Ground Two: State's Failure to Accept Stipulation**

In Ground Two, Petitioner argues that the State erred in refusing to accept Petitioner's stipulation related to his prior convictions, and that because of this error, the jury "heard the nature of his prior convictions." (D.E. No. 14-1 at 5.) The Appellate Court on direct appeal was presented with this claim and found it harmless in light of the trial judge's limiting instruction:

> [D]efendant contends that his conviction for possession of a handgun by a previously convicted person must be reversed and remanded for retrial because "the State refused to accept the defendant's stipulation that his prior convictions were sufficient to satisfy the prior conviction element" of N.J.S.A. 2C:39-7(b). We agree the trial court erred in rejecting defendant's proposed stipulation. *See State v. Alvarez,* 318 N.J. Super. 137, 154, 723 A.2d 91 (App. Div. 1999) (noting that "the trial judge erred in refusing to allow defendant to stipulate that he had the required convictions under N.J.S.A. 2C:39-7"). Nevertheless, in this case, unlike in *Alvarez,* the court gave the jury an adequate limiting instruction, emphasizing that the evidence of defendant's prior convictions for "possession of a controlled dangerous substance within a thousand foot of a school or aggravated assault" was admissible for only a very limited purpose:
>
>> In this case the evidence has been introduced only for the specific narrow purpose of establishing an element or a part of the present offense. You may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant has committed a prior crime he must be guilty of the present crime. The evidence produced by the State concerning a prior conviction has no place in your determination whether the defendant possessed the firearm in this case on the issue of possession.
>
> In light of this limiting instruction, which was sufficient to eliminate any undue prejudice to defendant, and the State's strong proofs, we are satisfied that the court's failure to accept defendant's proposed stipulation was harmless. *See* R. 2:10-2; *State v. Macon*, 57 N.J. 325, 340, 273 A.2d 1 (1971).

(D.E. No. 15-4 at 17-19).

This claim is purely one of state law, and as evidenced by the excerpt above, the state court's ruling relied purely on New Jersey law in rendering its decision. Further, in Petitioner's brief to the Appellate Division, he cited only New Jersey rules and New Jersey case law in arguing the state court erred in refusing to accept the stipulation. (D.E. No. 15-3.) Thus, this claim is not appropriate for federal habeas review. As noted earlier, "[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68 (1991); *see also Wells v. Pestock,* 941 F.2d 253, 256 (3d Cir.1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule . . .").  In addition, Petitioner has not shown that the decision based on state law violated any federal constitutional right. Therefore, this claim does not merit federal habeas relief.

### C.  Grounds Three through Ten & Ground Fourteen: Ineffective Assistance of Counsel

Petitioner next asserts that he was denied his Sixth Amendment right to the effective assistance of counsel. (D.E. No. 4 at 20-30, 34-39). The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687.

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a

claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id.* at 1083. On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington v. Richter,* 562 U.S. 86, 101 (2011).

### 1. **Ground Three: Failure to Request a *Wade* Hearing**

Petitioner alleges that his trial counsel was ineffective for failing to request a *Wade* hearing with respect to Joseph Baker's identification of Petitioner. (D.E. No. 4 at 19-20). The Appellate Division, in affirming the denial of PCR, denied this claim, explaining:

> Pursuant to the Sixth Amendment of the United States Constitution, a person accused of a crime is guaranteed the effective assistance of legal counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674, 693 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test enunciated in *Strickland*. "First, the defendant must show that counsel's performance was deficient" by establishing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Ibid.* "Second, the defendant must show that the deficient performance prejudiced the defense." *Ibid.* This requires the defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

. . .

> Defendant's claim that his attorney was ineffective for failing to request a *Wade* hearing to challenge Joseph Baker's out-of-court identification of defendant is not supported by the record. A pretrial identification is admissible at trial unless the identification procedure was impermissibly suggestive, and the objectionable procedure created a "'very substantial likelihood of irreparable misidentification.'" *State v. Madison*, 109 N.J. 223, 323 (1998) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed.2d 1247, 1253 (1968)).

> "[T]here is no automatic entitlement to an evidentiary hearing [to contest] an out-of-court identification." *State v. Ruffin*, 371 N.J. Super. 371, 391 (App. Div. 2004). "A threshold showing of some evidence of impermissive suggestiveness is required." *Ibid.* In this case, the PCR court found defendant was not entitled to an evidentiary hearing, because there was no evidence to support his claim that the photo array viewed by Joseph Baker was impermissibly suggestive. Based on our review of the record, we agree that Joseph Baker's out-of-court identification of defendant was not impermissibly suggestive and there was no likelihood of misidentification. Therefore, defense counsel was not deficient for failing to request a *Wade* hearing.

(D.E. No. 15-23 at 7-10).

The Supreme Court set forth the standard which governs the admissibility of an out-of-court identification in *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Pursuant to *Manson*, an identification procedure violates due process and the identification at issue is inadmissible where the procedure used was "unnecessarily suggestive and . . . create[d] a substantial risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

Regarding a *Wade* hearing, the Supreme Court has explained that a *Wade* hearing is not required in every case in which a defendant challenges an out-of-court identification. *See Watkins v. Sowders*, 449 U.S. 341, 349 (1981). In addition, under the *Strickland* standard, for a petitioner to demonstrate that he was prejudiced by counsel's failure to seek a *Wade* hearing, a petitioner "must show that he would likely have prevailed on [his] suppression motion and that, having

prevailed, there is a reasonable likelihood that he would not have been convicted." *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

Petitioner has failed to present sufficient evidence to suggest that he would have prevailed on his suppression motion. Therefore, the state court was correct in finding this argument failed under *Strickland*. Contrary to Petitioner's claims, the record makes it abundantly clear that the witness, Joseph Baker, had ample opportunity to view Petitioner on the night of the murder. (*See* D.E. No. 15-28 at 59-61) (wherein Mr. Baker indicated that Petitioner passed "a couple of feet away from us," just prior to the shooting, and that Petitioner shot the victim who was standing next to Joseph Baker, from approximately 18 feet away). While Joseph Baker did testify that he was not familiar with Petitioner prior to the murder, that does not negate the fact that Joseph Baker viewed Petitioner multiple times on the night of the murder from a relatively close distance.

Further, there is nothing in the record to indicate that the photo lineup was unduly suggestive. When asked about the photo identification at trial, Joseph Baker explained that he positively identified Petitioner, and that the detective conducting the photo array did nothing to persuade him to choose a specific photo. (*See* D.E. No. 15-28 at 73-75). Further, the detective who conducted the photo array, also described the photo identification process, which did not reveal that the process was unduly suggestive. (*See* D.E. No. 15-29 at 10-14).[1] These facts alone fail to demonstrate that the photo array was unnecessarily suggestive; as such, the state court

---

[1] Regarding the circumstances of the photographic identification, the detective stated at trial:

> He [Joseph Baker] opened window number one, then number two, then number three, then number four, stared at same, opened number five, then opened number six. Went back to number four, long stare, closed same. Opened five, then opened number four and stated, "That's him, but he was darker and had on a hat."

(D.E. No. 15-29 at 13).

appropriately found trial counsel's performance was not deficient and this claim is therefore denied.

### 2. **Ground Four: Eliciting Testimony that Petitioner was a Drug Dealer**

Petitioner argues that his trial counsel was ineffective for asking West Johnson a question that gave Mr. Johnson an opportunity to imply that Petitioner was a drug dealer. (D.E. No. 4 at 21). Petitioner explains that the trial judge had previously ruled that no questions were to be asked about Petitioner's involvement in drug-related activity because it would prejudice the jury. (*Id*. at 20). Nevertheless, Petitioner argues that his trial counsel prompted testimony related to Petitioner's drug activity. (*Id*. at 21).

The Superior Court of New Jersey, Appellate Division, in affirming the denial of PCR, cited to the record and addressed the claims as follows:

> Defendant also argues his attorney was ineffective for eliciting testimony from West Johnson that defendant was engaged in drug trafficking. This argument is based on the following questions by defense counsel and responses by Johnson:
>
> > Q. And you were telling Kwan [an individual standing beside Petitioner] he had to leave?
> >
> > A. Uh-huh. I'm just telling him in front of my aunt's house is non-negotiable. My aunt don't like people hustling in front of her house. So could you, please, show her some respect and don't sell drugs in front of her house.
> >
> > Q. That is what you told Kwan?
> >
> > A. That is what I told Kwan.
>
> Thus, Johnson's testimony regarding the sale of drugs was not prompted by defense counsel, and the testimony did not imply that defendant was selling drugs. Moreover, in her summation, defense counsel used the testimony to suggest that Johnson was a drug dealer, who was protecting his turf. Under these circumstances, we agree with the PCR judge that defense counsel was not ineffective.

(D.E. No. 15-23 at 10).

The state court, having previously cited to the appropriate law in *Strickland*, found counsel was not ineffective for eliciting this testimony. This Court agrees. Petitioner has not shown that his counsel's line of questioning fell below an objective standard of reasonableness, a necessary finding under *Strickland*. As can be seen above, the question prompted by defense counsel related specifically to an individual named "Kwan," not Petitioner himself.[2] Further, while it may be true that the parties agreed not to raise facts about Petitioner's past drug activity, defense counsel never asked the witness to relay that information. The witness on his own chose to reveal that he told Kwan, an individual standing beside Petitioner, not to sell drugs outside his aunt's house. Finally, as noted by the state court and demonstrated by the record, defense counsel made a reasonable strategic choice to pursue this line of questioning to paint a picture that Johnson and the Baker brothers were defending their turf against Petitioner, in an effort to blemish Johnson's credibility. (D.E. No. 15-32 at 30-31). *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional

---

[2] Earlier in his testimony, on direct examination, Johnson indicated that he had taken issue specifically with Kwan selling drugs:

> Q: Who were you referring to that you didn't want anybody selling drugs in front of your aunt's house?
>
> A: The person I pulled to the side.
>
> Q: You told Kwan he should not be selling drugs in front of your aunt's house?
>
> A: Exactly.

(D.E. No. 15-29 at 59).

judgment."); *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998) ("Our review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried. We therefore accord counsel's strategic trial decisions great deference"). Based on these facts, the state court's finding was not an unreasonable application of *Strickland* and Petitioner is not entitled to relief on this point.

### 3. Ground Four: Failure to Request a Mistrial

Petitioner next argues that his trial counsel was ineffective for failing to request a mistrial after the witness, West Johnson, made "inflammatory comments" about Petitioner in his testimony. (D.E. No. 4 at 22-23). The Appellate Division, in affirming the denial of PCR, had the opportunity to review this claim:

> We also reject defendant's claim that he was prejudiced by his attorney's failure to request a mistrial after Johnson's "violent and racist outburst at the beginning of his testimony." As evidenced by the trial court's comments to Johnson out of the presence of the jury, his immature statements undermined his credibility. In addition, the court provided the jury with an appropriate curative instruction, and defense counsel argued in her summation that Johnson's demeanor negatively impacted the State's case:

>> Now, West Johnson. West Johnson is a tortured soul, and he came here and testified before you, you saw him, and all he wanted you to know, all he could even get out, for the most part, was that, "This man killed my cousin. This man killed my cousin. This man killed my cousin. This man killed my cousin." He must have said it 20 or 30 times. He couldn't even answer a question from the prosecutor about anything else. It was as if, if he said it enough he may convince you, or himself, that that's the way it really was.

> Thus, the PCR court properly determined that defense counsel was not ineffective for failing to request a mistrial.

(D.E. No. 15-23 at 10-11).

The record reflects that during his testimony, West Johnson became agitated and angry and began to use swear words and racial slurs against Petitioner, while repeatedly stating that Petitioner was the one who killed his cousin. (D.E. No. 15-29 at 72-73). However, during the outburst, the record also makes clear that the trial judge insisted that the witness "take a break," and wasted no time in instructing the jury leave the courtroom. (D.E. No. 15-29 at 73). Further, immediately after the jury left the courtroom, the trial judge conducted a hearing to determine if the witness was able to properly continue his testimony. (*Id*. at 75-80). When the jury returned, the judge also gave a curative instruction, explaining that the jury must determine the credibility of witnesses, and that any statements made by Mr. Johnson that were not responsive to questions were not to be considered as evidence. (*Id*. at 81). During summation, defense counsel specifically alluded to the testimony of Mr. Johnson, stating that he was a "tortured soul" to bolster defense counsel's theory that Mr. Johnson shot the victim, not Petitioner. (D.E. No. 15-32 at 23).

Based on the curative instruction, the *sua sponte* hearing, and counsel's summation, the state court was correct in finding trial counsel was not ineffective for failing to request a mistrial. In closing, Petitioner's counsel made the reasonable strategic decision to use Johnson's outbursts against him. Because the state court did not unreasonably apply clearly established federal law, this ground for habeas relief is similarly denied.

### 4. **Grounds Six, Seven and Eight: Failure to Request Jury Instructions**

In Grounds Six through Eight, Petitioner argues that his defense counsel was ineffective for failing to request the trial judge to instruct the jury regarding causation and the lesser included offense of passion/provocation manslaughter. (D.E. No. 4 at 23-26). This Court first notes that these claims appear unexhausted, as they were raised in Petitioner's petition for PCR (D.E. No.

15-9 at 2), but never raised to the Appellate Division or to the New Jersey Supreme Court (*See* D.E. No. 15-17 through 15-20; D.E. No. 15-23 through 15-24).

Nevertheless, putting the issue of exhaustion aside, these claims fail on the merits. The underlying claims were addressed in Ground One, above, and were denied on the merits. Because of this, trial counsel was not ineffective for failing to raise meritless claims. *See*, *e.g.*, *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000) (explaining, that if an underlying claim "is not meritorious . . . defendants can not successfully argue that counsel's failure to raise the claim on direct appeal denied them their constitutional right of representation"); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit"); *see also Moore v. United States,* 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a meritless argument can never amount to ineffective assistance"). Because a claim of ineffective assistance of counsel should not be used as an end run to present an otherwise meritless claim on a habeas petition, habeas relief is denied on this issue.

### 5. Ground Nine: Failure to Object to Denial of Motion for Acquittal

In Ground Nine, Petitioner argues that his counsel was ineffective for failing to object to the trial court's denial of Petitioner's motion for acquittal. (D.E. No. 4 at 26-27). He explains that there was ample evidence to acquit him, but the trial court failed to weigh this evidence in denying his motion.[3] (*Id.*).

*Strickland*'s first prong requires us to determine if an attorney's performance fell below an objective standard of reasonableness. This Court is not convinced that counsel's performance fell

---

[3] Respondents argue that this claim is unexhausted because it was never raised to the New Jersey Appellate Division or to the New Jersey Supreme Court. (D.E. No. 15-1 at 12). Yet, even if unexhausted, the Court denies it on the merits.

below that standard. A review of the trial transcript reveals that there was sufficient evidence to find Petitioner guilty, such that counsel's failure to object to the denial of the motion for acquittal was not unreasonable. The evidence included eyewitness identification, and testimony from multiple witnesses as to the circumstances of the murder. Moreover, in deciding a motion for acquittal, the trial court must credit the state's evidence and draw all reasonable inferences in favor of the prosecution. Further, the jury had an opportunity to hear from the witnesses and found Petitioner guilty of murder. *See House v. Bell*, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict"). Because Petitioner has not demonstrated that his counsel's performance fell below an objective standard of reasonableness, the Court denies this ground for relief.

6. **Ground Ten and Fourteen: Failure to Argue Third-Party Guilt and Failure to Present a Complete Defense**

Petitioner argues in Ground Ten that his trial counsel was ineffective for failing to adequately argue the theory of third-party guilt with respect to West Johnson. (D.E. No. 4 at 27-30). Further, he argues that his trial counsel failed to present a full defense, by failing to adequately review discovery and taped statements of witnesses. (D.E. No. 4 at 35-36).[4]

Having reviewed the trial transcript, this Court is not convinced that trial counsel's performance was deficient. Under the first prong of *Strickland*, counsel's performance did not fall below an objective standard of reasonableness. Trial counsel adequately developed the theory of third-party guilt with respect to Johnson by thoroughly cross-examining the witnesses and by articulating the theory during summation. (*See* D.E. No. 15-32 at 22-25). For example, on cross-

---

[4] Respondents also argue that these claims are unexhausted. (*Id.*) To the extent that is the case, these claims, nevertheless, fail on the merits.

examination of Johnson, defense counsel elicited the strange fact that immediately after the victim was shot, Johnson somehow found a gun with which to shoot at Petitioner. (D.E. No. 15-29 at 105-06). Similarly, on cross-examination of Denise Baker, defense counsel elicited that Baker heard simultaneous gun shots from the shooter and from Johnson, and that she never actually saw who in fact shot the victim. (D.E. No. 15-29 at 176). Further, during summation, defense counsel thoroughly argued that the witnesses who identified Petitioner were all related to the victim and likely chose to pin the crime on him. (D.E No. 15-32 at 24-26). Based on these facts, it is evident that trial counsel put on a strong and complete defense, and her performance did not fall below an objective standard of reasonableness. *See Hess*, 135 F.3d at 908 (explaining that a reviewing court is not permitted to speculate about how a case might best have been tried); *see also Strickland*, 466 U.S. at 681. Because Petitioner has not shown his trial counsel to be deficient under *Strickland*, these claims are denied.

### D.  Ground Eleven: Introduction of Past Crimes

Petitioner alleges that he was prejudiced by the testimony of West Johnson, when Johnson alluded to Petitioner's drug activity in response to questioning by counsel. (D.E. No. 4 at 31-32). This argument is similar to Ground Four, wherein Petitioner argues that his trial counsel was ineffective for eliciting this testimony from Mr. Johnson. Petitioner raised this argument in his direct appeal, and the Appellate Division affirmed on this matter, stating only: "[b]ased on our review of the record, the briefs, and the applicable law, we are satisfied that defendant's arguments pertaining to his convictions are without sufficient merit to warrant extended discussion in a written opinion." (D.E. No.15-4 at 6).

Petitioner appears to raise a purely state law claim related to witness testimony. Plaintiff has not sufficiently proven any violation of his federal constitutional rights. *See Eley*, 712 F.3d at

847 (explaining that unless a constitutional error results in "actual prejudice," it will be considered harmless). As this Court has already emphasized, the evidence against Petitioner was ample. Moreover, and as noted above, Johnson's testimony never explicitly stated Petitioner was involved in drug activity. Without more, the Court finds that the state court did not violate clearly established federal law in rejecting this claim. Therefore, Petitioner is denied relief on this claim.

### E. Ground Twelve: Racial Slur

In Ground Twelve, Petitioner argues that his constitutional rights were violated by Johnson's inflammatory testimony toward Petitioner. (D.E. No. 4 at 32-33). Petitioner raised this claim on direct appeal, and the Appellate Court affirmed on the merits without further comment. (D.E. No. 15-4 at 6).

Again, Petitioner appears to raise purely state law issues related to witness testimony. Even assuming Petitioner's argument is sufficient to constitute a federal claim, this Court finds that the Johnson's obscenities were harmless because they were not substantial enough to have influenced the jury verdict. *See Eley,* 712 F.3d at 847. As noted above, in Ground Five, the trial judge instructed the jury to exit the courtroom during Mr. Johnson's outburst, the judge conducted a hearing to assess the witness' ability to continue to testify, and he gave a curative instruction to the jury. *See Penry,* 532 U.S. at 799 (noting that jurors are presumed to follow instructions); *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) (explaining that "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it . . ."). As such, any possible prejudice resulting from Mr. Johnson's outburst is harmless. To the contrary, and as reasonably argued by defense counsel in summation, such an outburst could have inured to the benefit of Petitioner because it demonstrated a bias held by Johnson. Consequently, the state court was correct in rejecting this claim, and this Court will deny habeas relief.

### F.  Ground Thirteen: Media Influence

Petitioner further argues that the trial court erred in failing to properly instruct the jury about media influences during trial.  (D.E. No. 4 at 33-34).  Petitioner explains that his defense counsel relayed to the trial judge that jurors arrived to court with newspapers, but the judge never sought to determine if the jurors were influenced by extraneous information.  (*Id.*).  Similar to Grounds Eleven and Twelve, Petitioner raised this claim on direct appeal, and the Appellate Court affirmed on this ground without an extended opinion.  (*See* D.E. No. 15-4 at 6).

The Sixth Amendment of the United States Constitution provides that "the accused shall enjoy the right to . . . trial by an impartial jury."  U.S. Const. amend. VI.  "The theory of our [trial] system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."  *Skilling v. United States*, 561 U.S. 358, 378 (2010).  However, the United States Supreme Court has also explained that jurors are not expected to be "totally ignorant of the facts and issues involved" and that "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."  *Irvin v. Dowd,* 366 U.S. 717, 722 (1961).  Moreover, "prominence [of news stories regarding a case] does not necessarily produce prejudice, and juror *impartiality* does not require ignorance."  *Skilling*, 561 U.S. at 360 (emphasis in original).

Thus, this Court is required to ascertain whether the possibility that jurors received information from extraneous sources prejudiced the outcome of the trial. This Court is not convinced that the outcome was prejudiced.  During the trial court's initial instruction to the jury, the trial judge expressly instructed them about media influences:

> Your deliberations should be based on testimony in the case without any influence from the outside or opinions of relatives or friends.

> Additionally, *I must instruct you not to read any newspaper articles pertaining to this case. I don't know if there is going to be any other newspaper or other media coverage of this trial, but you are instructed to completely avoid reading or listening to any newspaper or media accounts or listening to anyone else discuss them . . . Newspaper media accounts are not evidence and are often wrong and are based on second and third-hand information, which is purely hearsay, not always accurate and not subject to examination by the lawyers.*

(D.E. No. 15-28 at 25) (emphasis added).

The instruction by the trial judge was precise and clear and belies Petitioner's argument that the judge never properly instructed the jury regarding media influence. *See Penry,* 532 U.S. at 799 (jurors are presumed to follow instructions).

The other two instances Petitioner alludes to took place the following two days at trial. At sidebar, defense counsel requested the trial judge to instruct the jury about reading newspapers:

> If you could ask about reading the newspaper, because I know the reporter was here yesterday and I [have] seen people with newspapers.

(D.E. No. 15-29 at 5). While the record does not reflect that the trial judge acquiesced to defense counsel's request, there is nothing from the record to indicate that such an instruction was necessary. Without more, the fact that some unnamed jurors had been seen with newspapers is simply not enough to presume the outcome of the trial was prejudiced.

On the following day of trial, the trial judge, out of the presence of the other jurors, spoke with juror number eleven because he indicated that he was "scared." (D.E. No. 15-30 at 3-9). Defense counsel clarified that members of the victim's family had been making remarks to her and that may have been the cause of the juror's apprehension. (*Id*. at 5). The trial judge immediately questioned the juror about his ability to be impartial and the juror ultimately stated that he could be. (*Id*. at 6-9).

Based on the facts above, this Court is satisfied that the state court did not unreasonably apply federal law in rejecting this claim. The trial judge's instruction to the jury at the start of trial, coupled with the judge's appropriate questioning of juror eleven, demonstrate that the outcome of the trial was not prejudiced by outside media influence or juror impartiality. As such, Petitioner is denied habeas relief on this claim.

## G. Grounds Fifteen through Seventeen: Grand Jury Proceeding

In Petitioner's final three grounds for habeas relief, he indicates that the grand jury proceeding was flawed. (D.E. No. 4 at 39-51). While Petitioner's argument is not a model of clarity, he appears to argue that only one detective, Christopher Kenny, testified before the grand jury. Petitioner also seems to indicate that Detective Kenny read witness statements into the grand jury record, but the full statements were never actually recorded, resulting in an incomplete record. (*Id*. at 41-42). He further argues that Detective Kenny answered questions related to the medical examiner, Dr. Zaretski's report, which should have been answered by Dr. Zaretski himself. (*Id*. at 47-48).

Respondents argue this claim is unexhausted and fails on the merits. (D.E. No. 15-1 at 38-39). The Court agrees that these claims are unexhausted. Petitioner raised these claims in his *pro se* supplemental brief, in his petition for PCR (D.E. No. 15-13), but failed to raise this to the Appellate Division, or to the New Jersey Supreme Court (D.E. No. 15-17 through 15-20; D.E. No. 15-24). *See Leyva*, 504 F.3d 357 (laying out the exhaustion requirement for habeas petitions). Petitioner has provided no explanation for why he has failed to exhaust these claims.

Looking past the issue of exhaustion, the claim fails on the merits. Because this Court has not been provided with the grand jury record, this Court is unable to determine if there were errors in the grand jury proceeding in the manner Petitioner describes. Nevertheless, deficiencies in state

grand jury proceedings are generally not grounds for relief under § 2254. *See Lopez v. Riley,* 865

F.2d 30, 32 (2d Cir. 1989) (relying on *United States v. Mechanik,* 475 U.S. 66 (1986)). In

*Mechanik,* the Supreme Court held that a violation of a certain federal rule related to grand jury

proceedings, which was only later discovered at trial, did not justify relief after the petit jury had

rendered its verdict:

> the petit jury's subsequent guilty verdict means not only that there
> was probable cause to believe that the defendants were guilty as
> charged, but also that they are in fact guilty as charged beyond a
> reasonable doubt. Measured by the petit jury's verdict, then, any
> error in the grand jury proceedings connected with the charging
> decision was harmless beyond a reasonable doubt.

*Mechanik,* 475 U.S. at 70. While this is not always the case, *see Lafler v. Cooper,* 566 U.S. 156,

165 (2012) (explaining that it is not "a rigid rule that an otherwise fair trial remedies errors not

occurring at the trial itself . . . . instead [court's must inquire] whether the trial cured the particular

error at issue"), here, the Court finds that the trial did cure any possible errors during the grand

jury proceeding. Each witness that Detective Kenny allegedly read statements from during the

grand jury proceeding, had an opportunity to testify and be cross-examined at trial. (*See* D.E. Nos.

15-28 through 15-30). Further, Dr. Zaretski had an opportunity to testify at trial and was cross-

examined by defense counsel. (D.E. No. 15-30 at 31-71). In addition, Detective Kenny himself

testified at trial and was cross-examined. (*Id*. at 134-145). Thus, any errors related to witness

testimony during the grand jury proceeding were cured at the trial, which resulted in a guilty

verdict. Therefore, these claims for habeas relief are denied.

IV.     **CERTIFICATE OF APPEALABILITY**

        Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas

proceeding where that petitioner's detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to proceed further and a certificate of appealability is therefore denied.

## V.  **CONCLUSION**

For the reasons stated above, Petitioner's Amended Petition for habeas relief (D.E. No. 4), is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate Order follows.

s/ John Michael Vazquez
_____
**JOHN MICHAEL VAZQUEZ**
**United States District Judge**

**Date: 2/22/18**